DANIEL LECORTERA DEAMAT V. STATE OF TEX



 NO. 07-00-0436-CR


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



SEPTEMBER 13, 2001


______________________________



DANIEL LECORTERA DEAMAT
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 263TH DISTRICT COURT OF HARRIS COUNTY;



NO. 835,140; HON. JIM WALLACE, PRESIDING


_______________________________



Before BOYD, C.J., and QUINN, and JOHNSON, JJ.

 Appellant, Daniel LeCortera Deamat, appeals his conviction for burglary of a
habitation. His sole point of error concerns the effectiveness of his trial counsel. The latter
was supposedly ineffective because he allegedly 1) failed to investigate the "criminal
background" of a key witness and 2) mentioned "extraneous offenses in the presence of the
jury." We overrule the point and affirm.

Standard of Review


 The standard of review applicable to claims such as that at bar is well-settled and
adequately explained in Tong v. State, 25 S.W.3d 707 (Tex. Crim. App. 2000), cert. denied,
__U.S.__, 121 S.Ct. 2196, 149 L.Ed.2d 1027 (2001) and Thompson v. State, 9 S.W.3d 808
(Tex. Crim. App. 1999). We need not reiterate it.

Application of Standard


 Extraneous Offenses

 We first address the allegation that counsel was ineffective because she mentioned
extraneous offenses. In positing the contention, appellant simply cites excerpts from the
reporter's record wherein counsel attempted to read from an offense report. Nowhere does
he cite legal authority supporting the contention. (1) Nor does he explain how this conduct
fell below an objective standard of reasonableness. Also missing is any attempt to explain
how "the result would have been different" had the supposed error not occurred. (2) Rather,
the appellant merely suggests that the action was improper and concludes that "[t]he results
of the proceeding would have been different in the absence of . . . [the] unprofessional
errors."

 It is clear that the burden to prove a claim of ineffective assistance lies with the
appellant. Thompson v. State, 9 S.W.3d at 812. Similarly undisputed is the duty of an
appellant to posit clear and concise argument and accompany same with citation to the
record and pertinent legal authority. Tex. R. App. Proc. 38.1(h). It is not enough to merely
proffer conclusory, unsubstantiated observations. See Tong v. State, 25 S.W.3d at 710
(explaining that an appellant must support his contentions with relevant authority to be
adequately briefed); Lockett v. State, 16 S.W.3d 504, 505-506 n.2 (Tex. App.-Houston [1st
Dist.] 2000, pet. ref'd.) (stating that conclusory statements lacking citation to the record and
to authority presented nothing for review). Since the proposition at issue consists of
nothing more than conclusory utterances without citation to authority, we hold that appellant
fulfilled neither his burden as explained in Tong and Thompson nor his duty as imposed by
Texas Rule of Appellate Procedure 38.1(h).

 Investigation

 As to the contention that appellant did not investigate the criminal background of
Edward Ramos, we acknowledge that counsel has a duty to reasonably investigate the
allegations levied by the State and defend against same. Yet, before it can be said that
the performance of trial counsel was unreasonably deficient in this regard, the appellant
must proffer some evidence indicating that pertinent information existed which could have
been discovered. Lockett v. State, 874 S.W.2d 810, 817 (Tex. App. - Dallas 1994, pet.
ref'd.). This is so because the failure to discover (or attempt to discover) non-existent
information can hardly be prejudicial. More importantly, the various record excerpts
alluded to by appellant, reveal that the State informed both the court and opposing counsel
that Ramos "ha[d] no criminal history." As explained by the prosecutor:

 [The State's investigator] did . . . find the [sic] name of which [sic] is like the
complaining witness [Ramos]. We have checked the identifiers. The
identifiers do not match. I have questioned my witness about any priors. He
doesn't have any. He has denied having any priors. And, like I said, the
identifiers don't match. (3) 

Given the comments of the prosecutor and the failure of appellant to tender competent
evidence in support of his claim, we are unable to find that there existed information
beneficial to appellant which his trial counsel neglected to discover.

 Furthermore, no where does appellant cite us to evidence of record suggesting,
much less establishing, that trial counsel failed to investigate the background of witness
Ramos. Appellant merely concludes that she did not. Nor was trial counsel provided
opportunity to explain the extent of her investigation and preparation, if any, and the
motives or strategies underlying same. This generally proves fatal to a claim of ineffective
assistance. See Thompson v. State, 9 S.W.3d at 812-14 (holding that because the record
was silent as to why trial counsel did what he did, the appellant failed to rebut the
presumption that counsel's actions were reasonable); Beck v. State, 976 S.W.2d 265, 266-67 (Tex. App.--Amarillo 1998, pet. ref'd.) (holding the same).

 In short, we again conclude that appellant failed to carry his burden of proof. Given
that he failed to do so, we must also reject the contention that trial counsel acted
unreasonably in purportedly neglecting to investigate the criminal background of witness
Ramos.

 Accordingly, the judgment is affirmed.


 

 Brian Quinn

 Justice


Do not publish.
1. The authority he did cite concerned either the general standard of review applicable to claims of
ineffective assistance or the failure to investigate. None are cited as support for the proposition that the
mere mention of extraneous offenses somehow constitutes unreasonable conduct.
2. This is of particular note given the quantum of evidence illustrating appellant's guilt and the
punishment (probation) assessed by the jury.
3. We recognize that appellant attached to his brief a document entitled "Certificate of Disposition"
which purports to evince the criminal history of an "Eduardo Ramos Poblano" or "Eduardo Ramos Pablano." 
Yet, the instrument was not admitted as evidence in any proceeding conducted below. Nor was it attached
as evidence supporting any motion filed of record below. This, coupled with the rule restricting our review
of the cause to the record before the trial court, prevents us from considering the item for any purpose. 
James v. State, 997 S.W.2d 898, 901 n.5 (Tex. App.--Beaumont 1999, no pet.). Moreover, the witness in
question was named Eduardo Poblamo Ramos, while the individual purportedly described in the document
was named Eduardo Ramos Poblano or Pablano. Given this difference in the name, we could not say with
any reasonable assurance that the witness at bar and the person referred to in the document are one and
the same, assuming the document was legitimately before us. 



.416667in; margin-bottom: 0.104167in">          The relevant facts are undisputed. After a citizen’s report of a person who was
unconscious or unresponsive, Lubbock emergency medical service personnel responded
to a bank ATM location in the City of Lubbock. They found appellant in the driver’s seat
of a car with the engine running.


 Emergency medical technician Rick Perez woke
appellant and determined he did not require medical attention. Perez did report appellant
smelled of alcohol. Lubbock police officer Chad Demaray arrived shortly after the
ambulance. Demaray observed appellant smelled of alcohol and appeared disoriented. 
He released the ambulance and asked appellant to perform field sobriety tests. Based on
those tests, Demaray arrested appellant for DWI. During questioning at the police station
appellant told Demaray he had consumed four glasses of beer and was taking prescription
medications. 
          The information charging appellant with DWI alleged he operated a motor vehicle
in a public place while “intoxicated by not having the normal use of mental or physical
faculties by reason of the introduction of alcohol into the body.” Appellant pled not guilty
and the case was tried to a jury. At trial, the State’s only witnesses were Perez and
Demaray, who testified to the facts we have set out. 
          The only defense witness at the guilt-innocence phase was appellant’s wife,
Amanda Romero, who testified at the time of arrest appellant was taking Lipitor, for
hyperlipidemia, Atenolol, an antihypertensive, Zoloft, an antidepressant, and baby aspirin.
She also described the effect of those medications on appellant.
          The jury charge contained two application paragraphs. Paragraph 3 provided:
Now, if you find from the evidence beyond a reasonable doubt that on or
about March 5th, 2004, in Lubbock County, Texas, the defendant,
KENNETH M ROMERO, did then and there operate a motor vehicle in a
public place while the said defendant was intoxicated by not having the
normal use of mental or physical faculties by reason of the introduction of
alcohol into the body; then you will find the defendant guilty as alleged in the
information.
 
You are further instructed that if a defendant indulges in the use of Lipitor,
Atenolol, Zoloft, baby aspirin, or Plavix to such an extent than he thereby
makes himself more susceptible to the influence of alcohol that (sic) he
otherwise would have been, and by reason thereof becomes intoxicated from
recent use of alcohol, he would be in the same position as though his
intoxication was produced by the use of alcohol alone.
 
Unless you so find beyond a reasonable doubt or you have a reasonable
doubt thereof, you will acquit the defendant and say by your verdict “not
guilty”.
 
In paragraph 4 the jury was charged:
Now, therefore, if you find and believe from the evidence beyond a
reasonable doubt that the Defendant, Kenneth Romero, on or about the 5th
day of March, A.D. 2004, in the County of Lubbock and State of Texas was
intoxicated, in that the Defendant did not have the normal use of his mental
or physical faculties by reason of the introduction of alcohol into his body,
and while so intoxicated by reason of the introduction of alcohol into his
body, either alone or in combination with Lipitor, Atenolol, Zoloft, baby aspirin
or Plavix and on the said date did then and there drive or operate a motor
vehicle in a public place; you will find the defendant guilty as charged in the
information.
Appellant objected to the synergistic effect instruction in paragraph 3 on the basis it
authorized conviction on a theory not alleged in the information. The trial court overruled
the objection and both paragraphs were included in the charge. The jury found appellant
guilty and punishment was assessed at one year of confinement and a fine. Imposition of
the sentence was suspended for 24 months and appellant was placed on community
supervision.
            In a single issue, appellant contends the trial court erred in charging the jury on the
synergistic effect of the prescription medications and alcohol because there was no
evidence of such a synergistic relationship between the medications and alcohol. The
standard of review for jury charge error is set out in Almanza v. State, 686 S.W.2d 157, 171
(Tex.Crim.App. 1984) (op. on reh’g) and reaffirmed in Middleton v. State, 125 S.W.3d 450,
453 (Tex.Crim.App. 2003). We first determine if error exists in the court’s charge. 
Middleton, 125 S.W.3d at 453 (citing Hutch v. Sate, 922 S.W.2d 166, 171 (Tex.Crim.App.
1996)). If we find charge error, then we analyze the error for harm, with the type of harm
analysis we employ dependent on whether the error was preserved. Middleton, 125
S.W.3d at 453. Under Almanza, for preserved error, we must reverse if we conclude the
defendant suffered "some harm." Almanza, 686 S.W.2d at 171. If error was not properly
preserved, we will reverse only if the record establishes as a result of the court’s error the
defendant suffered "egregious harm." Id. 
            In Gray v. State, the Court of Criminal Appeals summarized a trial court’s
responsibility concerning the jury charge as follows:
Our Legislature has made clear that a trial judge's charge to the jury must set
forth the law applicable to the case. Relying on that statute, we have held
that a trial court is required to fully instruct the jury on the law applicable to
the case and to apply that law to the facts presented. It is not enough for the
charge to merely incorporate the allegation in the charging instrument. 
Instead, it must also apply the law to the facts adduced at trial. This is
because the jury must be instructed under what circumstances they should
convict, or under what circumstances they should acquit. Jury charges which
fail to apply the law to the facts adduced at trial are erroneous. 

152 S.W.3d 125, 127-128 (Tex.Crim.App. 2004) (citations and internal quotation marks
omitted). 
          As noted, appellant’s objection at trial to the proposed charge was that it would
authorize his conviction on a theory not alleged in the information. That objection is
answered by the opinion in Gray, 152 S.W.3d at 133. Like the charge at issue in Gray, the
charge here required the jury to find appellant was intoxicated due to alcohol.


 It was thus
consistent with the information. The trial court properly overruled appellant’s objection. 
          On appeal, appellant raises a different objection to the charge. His appellate issue
contends the synergistic effect instruction was improper because there was no evidence
of a synergistic relationship between the listed medications and alcohol. The gist of his
argument is that a trial court errs by including such an instruction in the charge absent
expert testimony of the effects of combining the medications and alcohol. He notes expert
testimony on the effect of combining alcohol and the medication used by the defendant
was presented in Gray, 152 S.W.3d at 126-27 (State chemist testified to synergistic effect)
and Sutton, 899 S.W.2d at 684 (forensic science expert testimony that beer would
“enhance the effect” of the medication).


 
          Appellant is correct that expert testimony was presented in the cases he cites. But
we do not read any of them to say that a court errs by giving an instruction telling the jury
“under what circumstances they should convict, or under what circumstances they should
acquit,”


 when testimony raises the issue whether the defendant’s intoxication resulted
from use of alcohol or ingestion of medication, unless the jury has heard expert testimony
of a synergistic effect from the use of medications and alcohol.


 In Eaton v. State, the
Texarkana court of appeals recently found no error in an instruction similar to that
addressed in Gray. No. 06-06-00153-CR, 2006 WL 1702286 , 2006 Tex.App. LEXIS 5309
(Tex.App.–Texarkana, June 22, 2006, pet. ref’d) (not designated for publication). The
evidence there came from a trooper’s testimony that the defendant admitted he “‘shouldn’t
be mixing alcohol with his antibiotic medication,’” and from the defendant’s wife, a licensed
vocational nurse. 2006 WL 1702286 *1. She described the medications her husband was
taking to treat spider bites, and agreed that pain medicine should not be mixed with
alcohol. Id. Citing Gray, the appellate court agreed with the State that the testimony
supported the trial court’s inclusion of the instruction. Id. at *2.
          Similarly, in Robinson v. State, the court found the issues addressed by a
synergistic effect instruction were raised by the evidence. No. 05-05-01722-CR, 2007 WL
882487 *4, 2007 Tex. App. Lexis 2316 *9-10 (Tex.App.–Dallas, March 26, 2007, no pet.)
(not designated for publication). The evidence came from a police officer’s report reciting
the defendant’s statement she was under the care of a psychiatrist and had been
prescribed Xanax, the defendant’s statement on an arrest video that she was “taking
Xanax,” a Physician’s Desk Reference section on Xanax stating that because of its “CNS
depression effects, patients receiving Xanax should be cautioned against” activities such
as driving a motor vehicle, and, for the same reason, should be cautioned about the
simultaneous ingestion of alcohol and other CNS depressive drugs during treatment with
Xanax, and the arresting officer’s testimony that Xanax “could have” or “possibly” been a
cause of the defendant’s intoxication. 2007 WL 882487 *3-5.
          In the case at bar, officer Demaray testified for the State that appellant admitted
consuming four glasses of beer and taking prescription medication that morning. In his
case in chief, appellant offered the testimony of his wife Amanda Romero. Romero, a
registered nurse of 15 years, stated she was employed by a Lubbock physician as a
clinical research coordinator conducting drug trials for new medications. Concerning
appellant, she testified that at the time of his arrest he was taking the prescribed
medications Lipitor, Atenolol, Zoloft, Plavix, and “baby aspirin.” She added that he had
taken these medications since November 2000. According to Romero, these medications
caused such symptoms in appellant as confusion, memory loss, sleepiness, and agitation. 
Romero explained that Zoloft carries a warning that patients should exercise caution when
using it with alcohol. She opined a person taking Zoloft should not operate a motor vehicle
after “drinking heavily.”


 She believed factors such as a person’s size, weight, food
consumed, and “things like that,” determine whether consumption of four beers crosses
the threshold of “drinking heavily.” She believed appellant might become intoxicated after
consuming five or six beers. Romero stated that her husband’s symptoms she associated
with his medications were sometimes activated by alcohol consumption. 
          In Gray the court authorized jury instructions on the synergistic effect of drugs and
alcohol in DWI cases where there is some evidence presented at trial that the accused's
loss of the normal use of his mental and/or physical faculties due to alcohol consumption
was enhanced or worsened because of drug consumption. Gray, 152 S.W.3d at 127, 131,
133. The defendant in Gray, was charged with DWI by reason of the introduction of
alcohol into his system. Id. at 126. But at trial it was shown that at the time of arrest the
defendant was also taking antidepressant medications. Id. The court gave the jury a
synergistic effect charge similar to the one given in this case. Id. at 127. The court of
criminal appeals found no error. Id. at 133-34.
          Here the jury heard evidence of appellant’s alcohol consumption on the day in
question, his use of prescription medications including the antidepressant Zoloft, the
warning that Zoloft and alcohol should be used together with caution, that a patient taking
Zoloft should not operate a motor vehicle after substantial alcohol consumption, that
alcohol and the medications appellant took affected his behavior. 
          We find some evidence was presented raising the issue of a synergistic relationship
between appellant’s medications and alcohol. Accordingly, we find the court did not err by
including an instruction addressing that subject. Having found no error, we do not reach
the subject of harm.


 We overrule appellant’s single issue.
          Having overruled appellant’s sole issue we affirm the judgment of the trial court.
 
                                                                           James T. Campbell

                                                                                      Justice









Do not publish.